## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SHOFUR, LLC; | ) | **CIVIL ACTION NO.:** |
| | ) | |
| Plaintiff, | ) | _____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DARRELL FITZPATRICK, | ) | |
| MONICA DENSON, | ) | |
| A PLUS EARLY LEARNING | ) | |
| ACADEMY, | ) | |
| NATIONAL CHARTER EXPRESS, | ) | |
| SEMPER FIDELIS SYSTEMS LLC, | ) | |
| SHOFURR EXPRESS, LLC, | ) | |
| JOHN DOES 1 THROUGH 10, and | ) | |
| JOHN DOE ENTITIES 1THROUGH 10, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Shofur, LLC ("Shofur" or "Plaintiff"), through its undersigned counsel, alleges as follows:

## INTRODUCTION

This is an action for injunctive and other legal and equitable relief relating to Defendants' trade secret misappropriation, unfair competition, breach and/or inducement to breach confidentiality, non-solicitation and non-competition provisions, theft of and diversion of at least $423,000 in accounts receivables due to Plaintiff from the United States department of Defense, and other illegal acts in

1

furtherance of their scheme to steal and unlawfully compete with the charter bus reservation platform/business of Plaintiff Shofur, LLC. Companies such as Uber, Lyft and Shofur have provided mobility for millions of people in what has become a multi-billion dollar transportation logistics industry. Defendants have misappropriated monies owed to Shofur in addition to Shofur's customer lists, intellectual property, confidential information and trade secrets so as to avoid incurring the risk, time, and expense of independently developing their own systems, customer base and technology. This calculated theft has allowed Defendants to start a competing business and steal customers and millions of dollars of business all at Shofur's expense.  Defendant Darrell Fitzpatrick, and certain as yet unidentified persons or entities conspired with the other Defendants to violate numerous federal and Georgia common law and statutory laws.

## NATURE OF THE ACTION

1.    This case involves unlawful actions by Defendants Darrell Fitzpatrick ("Fitzpatrick" or "Defendant"), Monica Denson ("Denson"), A Plus Early Learning Academy, National Charter Express, Semper Fidelis Systems LLC, Shofurr Express, LLC as well as certain as yet undisclosed entities (collectively "Defendants"). Specifically, the Defendants stole accounts receivable owned to Plaintiff, Plaintiff's trade secrets and confidential and proprietary information, engaged in unfair

2

competition, and, in the case of Fitzpatrick, breached various agreements and duties owed to Shofur.  In the course of Defendants' scheme to steal money, trade secrets and Shofur customers, Fitzpatrick violated contractual confidentiality, non-competition and non-solicitation agreements he had with Shofur – which was exactly what the confidentiality and non-competition provisions were designed to prevent. The value of the customers and corresponding revenue stolen by Defendants is in the millions of dollars. But for the unlawful actions of Defendant Fitzpatrick and the other Defendants, ongoing customer contracts, including contracts with the United States Defense Department, would have remained with Shofur.

2.     The theft of Shofur's accounts receivable, information, and customers began while Fitzpatrick was still employed by Shofur.

3.     During his tenure at Shofur and unbeknownst to the company, Fitzpatrick diverted funds from a federal agency, began running a competing business individually, through his entities Shofurr Express, LLC, National Charter Express and other entities he controlled wherein he began providing charter bus reservation services to Shofur customers. Despite the existence of confidentiality, non-competition and customer non-solicitation agreements, and despite the fact that he owed a duty of loyalty to Shofur, Fitzpatrick abused his position of trust to gain access to Shofur's accounts receivable information, customer information and

relationships, trade secrets, confidential information and commercially sensitive information and misappropriated this information for the benefit of himself and the other Defendants.  Specifically, during and after his employment, Fitzpatrick used Shofur's information to prepare competing bids for Defense Department and other customers through his entities Shofurr Express, LLC and National Charter Express. Since Fitzpatrick's departure, Shofur has not received any other Defense Department contracts.

4.     Subsequent to Fitzpatrick's departure from the company in June 2019, Shofur was informed by a representative of the Defense Department that Fitzpatrick diverted monies owed to Shofur and was providing charter bus reservation services to the Defense Department (a Shofur customer known to Fitzpatrick by virtue of his employment at Shofur) through an entity called National Charter Express.  Shofur was also informed that Fitzpatrick had been providing logistical transportation services to the Defense Department through another competing entity he created - Shofurr Express, LLC. Had Fitzpatrick not misappropriated Shofur's confidential and proprietary information, the Defense Department would have paid monies due and owing to Shofur (instead of to Fitzpatrick) and Defense Department contracts/business would still be with Shofur.

5.     On information and belief, in addition to stealing accounts receivable and information with respect to the Defense Department, Fitzpatrick stole information with respect to other Shofur customers and has been doing business with them to Shofur's detriment.

6.      On information and belief, Fitzpatrick was substantially assisted in his efforts by the other Defendants, who also secretly and unlawfully utilized the information stolen by Fitzpatrick.  Fitzpatrick and the other Defendants engaged in a common scheme to undermine Shofur and obtain contracts and business for themselves to the detriment of Shofur.

7.     As a result of Defendants' conduct, Shofur has suffered actual damages. If Defendants are not restrained from further unfair activities through the acts complained of, and ordered to cease their unlawful conduct, Shofur will be irreparably harmed and will continue to suffer the irreparable loss and disruption of its business and the unauthorized dissemination of its confidential information. Accordingly, Shofur seeks injunctive relief to prevent the immediate irreparable harm that it faces from these actions, as well as damages and the costs of this action, including its reasonable attorneys' fees.

## Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.  The Court has federal question jurisdiction because Shofur asserts claims against Defendants under various federal statutes including the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*., the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. and the Stored Communications Act 18 U.S.C. § 2701. The Court has supplemental jurisdiction over all claims for which the Court lacks original jurisdiction pursuant to 28 U.S.C. § 1367 because Shofur's claims arise out of the same common nucleus of operative facts, namely, Fitzpatrick's improper and illegal actions immediately before and after her separation from Shofur and the other Defendants' illegal actions toward Shofur after Fitzpatrick's separation of employment from Shofur.

9.     This Court has personal jurisdiction over all Defendants. Each Defendant is a citizen of Georgia and resides in this District. In addition, each Defendant individually has had continuous and systematic business contacts with the State of Georgia and in this District. Defendants Fitzpatrick, Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC conduct its and their businesses extensively throughout the State of Georgia, by providing its products and/or services in the State of Georgia

and this District. Shofur's cause of action for breach of contract and related claims against Fitzpatrick and the claims against all other Defendants arise directly from all Defendants' activities in this District. Shofur's cause of action for misappropriation of trade secrets under the DTSA and GTSA, and for unauthorized computer access under the CFAA and GCSPA arise directly from each and all of Defendants' activities in this District.

10.     Venue is proper in this District and Division pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this action took place in this District and Division, Fitzpatrick and Denson are domiciled in this District and Division, Shofur's principal place of business is in this District and Division and the harm is felt in this District and Division.

## The Parties

11.     Shofur is a Georgia corporation with its principal place of business in Atlanta, Georgia.

12.     Defendant Fitzpatrick is an individual resident of the State of Georgia who may be served at his residence address: 1685 Rifle Way SW, Marietta, GA 30064-4873.

13.     Defendant Denson is an individual resident of the State of Georgia who may be served at her residence address: 1685 Rifle Way SW, Marietta, GA 30064-

4873.  Defendant is listed as the Director of Defendant APlus Learning Academy.

14.    Defendant APlus Learning Academy is a Georgia licensed Child Care Learning Center (License Number CCLC-48940) with its principal place of business at 1405 Franklin Gateway SE, Suite L-2, Marietta, GA 30067.  Defendant APlus is not registered with the Georgia Secretary of State and is, based on information and belief, owned by Defendant Fitzpatrick.

15.    Defendant National Charter Express holds itself out as a business of unspecified type and is not registered with the Georgia Secretary of State.   On information and belief, Defendant Fitzpatrick is associated with Defendant National Charter Express.  Defendant National Charter Express may be served through its agent, Defendant Fitzpatrick.

16.    Defendant Semper Fidelis Systems, LLC is a Georgia Domestic Limited Liability Company with its principal place of business at 1685 Rifle Way SW, Marietta, GA 30064-4873. Defendant Semper Fidelis Systems, LLC was organized by Defendant Fitzpatrick, and its registered agent for service is Registered Agents, Inc. at 300 Colonial Center Parkway, STE 100N, Roswell, GA, 30076.

17.    Defendant Shofurr Express LLC was a Georgia Domestic Limited Liability Company formed in April 2019 with its principal place of business at 1685 Rifle Way SW, Marietta, GA 30064-4873. Upon information and belief, Defendant

Shofurr Express LLC was organized by Defendant Denson, and its registered agent for service was Defendant Denson.   Upon information and belief, Defendants Fitzpatrick and Denson conducted business under the name Shofurr Express, LLC before, during and after the dates of the entity's registration with the State of Georgia. Defendant Shofurr Express, LLC may be served through its agent, Defendant Denson.

18.     On information and belief, Defendants John Does 1 through 10 and John Doe Entities 1 through 10 are one or more individuals and/or entities the names and addresses of residences of which are unknown.  Defendants John Does 1 through 10 and John Doe Entities 1 through 10 were participants in the allegations and claims herein.

## **Background**

19.     Shofur LLC is a charter bus reservation business headquartered in Atlanta, Georgia that offers charter bus service in over 250 cities in the United States and Canada. The company uses proprietary software with access to real-time availability data to match customers with bus operators.  Shofur customers can reserve buses directly through company sales representatives or through the company's website. Shofur also provides transportation reservation services for major events and conventions that require advanced logistics and planning. The

9

company has provided large-scale motor coach services to universities, government agencies, large corporations, sporting events and music festivals.

20.     Shofur began operations in 2012 as a one person business and has grown into a company with multi-million dollars in annual revenues with over 50 employees.

21.     Shofur relies upon trade secrets and other confidential information in developing and implementing its transportation services, customer base, business and sales strategies, acquisition and growth plans and strategies, and its competitive sales and marketing campaigns. Each year Shofur spends millions of dollars and dedicates extensive efforts toward marketing, customer development, and the development of technological innovations in the conduct of its business.

22.     Among other things, Shofur utilizes trade secrets, proprietary information and methods, confidential technical know-how, competitively-sensitive client and logistics information, and confidential competitive strategies to design, develop, and implement a variety of products and services relating to the charter bus reservation industry.

23.     Shofur's skilled salesforce works closely with a network of transportation companies and customers and provides charter bus reservation services and operational support, thus furthering its position as a market leader in

the industry. Over the years, Shofur successfully built its business and team through training and developing a skilled salesforce, and for developing and growing customer relationships.

24.    Plaintiff takes reasonable efforts to ensure the confidentiality and protection of its confidential information and trade secrets. For instance:

- Plaintiff requires employees who have access to confidential information and trade secrets to sign non-disclosure agreements.

- Plaintiff restricts access to its' confidential information and trade secrets to those employees on a need to know basis.

- Plaintiff's computer systems and electronically-stored data is protected by hardware and electronic security devices and applications, including through a firewall.

- Plaintiff's customer and confidential data is protected at rest and in transit by encryption.

- Plaintiff restricts access to customer information through a password protected reservation system that was developed by Shofur's software engineers.

- Plaintiff's data protection systems and policies comply with the Payment Card Industry Data Security Standard (PCI DSS) for protection of transaction and payment information, which compliance is regularly audited by an independent third party.

- Plaintiff restricts digital communications with customers by only allowing staff to email customers via company email accounts.

- Plaintiff restricts the sales team's communications with customers by only allowing managers to take calls outside of the office via a digital phone system that is password protected.

- Plaintiff restricts customer billing information by only allowing managers to

11

access customer billing information via a password protected digital billing system.

- Plaintiff purchases computers for all staff so work can only take place on company laptops. Laptops have to be returned once employees separate from the company.

**Defendant Fitzpatrick**

25.     Defendant Fitzpatrick was employed at Shofur beginning in November 2014, while the company was in its nascent stages, and was continually employed through June 2019.  Fitzpatrick was initially employed by Shofur as an "outside" sales person, and within two weeks of joining Shofur as an "inside" sales person, responsible for selling charter, motor coach transportation services to individuals and entities, which services were to be provided by third party motor carriers.

26.     As the company grew so did the responsibilities of Fitzpatrick.     He was given ever greater responsibilities that included entering into sales agreements with Shofur customers and overseeing Shofur sales employees.     Fitzpatrick eventually became responsible for overseeing a Shofur sales team responsible for acting on leads generated by Shofur's marketing team and then taking those leads through the sales process.  Fitzpatrick was vested with substantial authority by Shofur with respect to customer relations, to set prices for Shofur's services within very broad pricing guidelines, and to resolve disputes with Shofur customers. Defendant Fitzpatrick used that discretion to enter into binding agreements on behalf

of Shofur with Shofur's customers for the provision of services and for the resolution of customer disputes.  Because of the trust Shofur placed in Fitzpatrick, he was given access to billing and accounts receivable information, and was often assigned the best customer leads developed by the Shofur marketing department.

27.     As a result of his position of trust at Shofur, Fitzpatrick was intimately familiar with the company's billing, accounts receivable, strategies and plans, its methods of selling and delivering services, and its major customers and potential customers.   Fitzpatrick received trade secret and other highly confidential information across Shofur's entire business. Fitzpatrick gained detailed knowledge of Shofur's customers, customer lists, customer targets, logistics systems and operations, confidential strategies, marketing models and strategies, pricing, service processes, proprietary tools and methods, service delivery capabilities.  Fitzpatrick also had knowledge of Shofur's billing, accounts receivables, financial budgets, forecasts and results, expenses, employee salaries, labor costs, and profit projections, and service innovations and new lines of business being developed by Shofur.  In sum, Fitzpatrick had access to Shofur's trade secrets and confidential and proprietary information - including customer information.

28.     Fitzpatrick also had a company computer that provided him with access to Shofur confidential and proprietary information and trade secrets.  During the

course of the scheme described herein Fitzpatrick improperly accessed and exceeded his authorized access to Shofur's computer systems.

## Confidentiality, Non-Competition and Non-Solicitation Agreements

29.    In November 2014, when he joined Shofur, Fitzpatrick signed an employment agreement that contained a confidentiality agreement in which he agreed that he "shall not directly or indirectly use or disclose, except as authorized by the Company in connection with the performance of Employee's duties, any Confidential Information". "Confidential Information" as set forth in the agreement includes:

- any information, data and know-how relating to the business of the Company that is disclosed to Employee by the Company or known by him as a result of his relationship with the Company;

- all records, files, analyses, documents, software, computer or electronic data disks or tapes, test data, printouts, processes, designs, file layouts, technical bulletins, manuals, diagrams, formulas, research, inventions, patents and discoveries reasonably related to Company's business or products and services of Company that have not previously been publicly released by Company;

- technical, financial, business plan and <u>customer information</u>, including standard periodic financial statements and analyses, budgets, business plans, tax returns, benefit and compensation plans, <u>customer list(s) and contact names</u>, functional and technical specifications, designs, drawings, analysis, research, processes, computer programs, methods, ideas, "know how" and the like . . .

Fitzpatrick agreed that Confidential Information "shall remain the property of the Company" and upon termination "shall immediately return all such materials". The Fitzpatrick confidentiality agreement was for the time period that included the term of his employment and for the three year period after termination and, with respect to Shofur trade secrets, for the longest period permitted by law.

30.    Fitzpatrick's employment agreement also included a non-competition agreement. That provision states that during the term of his employment and for the twenty-four (24) months thereafter:

- Employee shall not, directly or indirectly, be employed by or provide services to any business that engages in activities similar to those performed by the Company and/or sells or offers for sale products and services that are competitive with the Company as of the date of Employee's termination or during the twenty-four (24) months preceding Employee's termination . . .

- This restriction shall apply to the territory in which Employee has or will perform services for the Company during the twenty-four (24) months preceding Employee's termination of employment with the Company and which is reasonably estimated to be the Atlanta Georgia metro area

31.    Fitzpatrick's employment agreement also included a customer non-solicitation agreement. That provision states that during the term of his employment and for the twenty-four (24) months thereafter:

- Employee shall refrain from soliciting, or attempting to solicit, any business from any of the Company's customers, including actively sought prospective customers, with whom the Employee had material contact during his employment for purposes of selling or promoting products or services that are

competitive with those provided by the Company as of the date of such termination of employment.

32.     The confidentiality, non-competition and customer non-solicitation provisions, along with the other provisions in the Fitzpatrick employment agreement, are narrowly tailored and reasonable and necessary to protect legitimate protectable interests in Shofur's confidential, proprietary, and/or trade secret information, its' business, customer relationships, and goodwill.

**The Improper Actions of Fitzpatrick and the Other Defendants**

33.     While employed at Shofur, beginning no later than April 2019, Defendant Fitzpatrick began engaging in conduct that was detrimental to Shofur's business.  For example, Fitzpatrick disappeared from the office for long periods of time and while absent was not tending to his duties.  Shofur relies upon customer service to develop and maintain customer relations and good will.  Fitzpatrick routinely failed to respond to customer calls and placed customer and prospective customer calls on hold for extended periods of time.  This resulting in terminated calls followed by calls from customers and prospects complaining of poor customer service.  Shofur also discovered that Defendant Fitzpatrick was providing customers with price quotes well in excess of the Shofur pricing guidelines.  This scheme of providing Shofur customers/prospects with higher price quotes and failing to take sales and service calls resulted in lost business opportunities for Shofur. The reason

for this became apparent at later dates. As a result of the foregoing, the company terminated Defendant Fitzpatrick's employment in June 2019.

34.     Subsequent to Fitzpatrick's termination, Shofur learned that while he was employed at Shofur he engaged in a competing business.  On or about April 19, 2019, Defendant Denson and, upon information and belief, Fitzpatrick and Denson formed an entity called Shofurr Express, LLC.  The purpose of the entity was to engage in the charter bus reservation business.   Defendants Fitzpatrick's and Denson's use of the name Shofurr Express LLC – which is obviously similar to Plaintiff's name Shofur, LLC – was purposeful and used to benefit from Shofur's brand recognition and to deceive Shofur LLC customers, including personnel at the Department of Defense, into authorizing payments to Defendant Fitzpatrick or some unknown entity owned/controlled by Defendant Fitzpatrick rather than to Plaintiff Shofur.  The foregoing is prima facie evidence of unfair competition.

35.     The Defense Department and various sub-agencies were customers of Shofur for a number of years prior to Fitzpatrick's termination.  Fitzpatrick was one of the sales representatives that serviced the Defense Department account and Fitzpatrick became aware of the account as a result of his employment at Shofur. Over the course of several years prior to his termination, Defendant Fitzpatrick had significant contact with the Defense Department through email and phone

17

correspondence on behalf of Shofur for the purpose of selling transportation services on behalf of Shofur. Fitzpatrick had access to information about the Defense Department account, billing, accounts receivables, pricing information and other Shofur confidential information relating to the account as a result of his employment at Shofur.

36. Subsequent to Fitzpatrick's termination, Shofur learned from investigators with the Department of Defense that, during 2019 while still employed with Shofur, Fitzpatrick diverted from Shofur over $423,858 of sales revenue from the Department of Defense charter bus reservation services. It was an audacious scheme. The Defense Department was sent invoices by Shofur that were paid from a credit card provided by the department of Defense to Shofur. Credit card payment instructions were delivered by Shofur and funds were automatically paid to Shofur from the Defense Department credit card. After Fitzpatrick's termination from Shofur, the Department of Defense informed Shofur that on at least 11 occasions, and unbeknownst to Shofur, Fitzpatrick accessed the Department of Defense credit card and provided instructions for payment to merchant accounts owned and/or controlled by Fitzpatrick. That is, Shofur invoices were sent to the Department of Defense and Fitzpatrick diverted payments from the Department of Defense to

Fitzpatrick.  In addition to giving rise to Shofur's claims for misappropriation and conversion, the action of Fitzpatrick give rise to criminal liability.[1]

37.     Defendant Fitzpatrick accessed Shofur's email system on at least three occasions to communicate with a sub-agency of the Department of Defense and on each such occasion accessed Shofur's computer network system to generate competing quotes for transportation services. This was done in the course of, and in furtherance of, Fitzpatrick's illegal scheme to divert business from Shofur to a competitor – Firzpatrick and/or the other Defendants.

38.     On information and belief, Defendant Fitzpatrick facilitated the diversion of this Shofur sales revenue with the knowledge and assistance of Defendant Denson, who with Fitzpatrick formed, Shofurr Express LLC with the business purpose of providing bus transportation and limousine services.

---

[1] See for instance: 18 U.S.C. §641 which states: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . [s]hall be fined under this title or imprisoned not more than ten years, or both . . . ." Section 641 imposes equal penalties for receiving, concealing, or retaining government property, "with intent to convert it to his use or gain," and with knowledge that it has been obtained from the government illegally.

39.     In addition to the use of Shofurr Express, LLC, Shofur learned from the Department of Defense that while he was employed at Shofur, Defendant Fitzpatrick was diverting Department of Defense business through another entity - National Charter Express.

40.     On information and belief, Defendants Fitzpatrick and Denson jointly, used Defendant APlus Learning Academy, which is owned by Defendant Fitzpatrick and managed by Defendant Denson, to engage in activities in direct competition with Shofur.

41.     On information and belief, Defendant Fitzpatrick and the other Defendants utilized other unknown individuals and entities to improperly engage in competitive business with Shofur customers in addition to the Defense Department.

42.     On information and belief, while employed at Shofur Defendant Fitzpatrick abandoned potential customers of Shofur and quoted excessive prices to customers for transportation services so as to enable Defendants Fitzpatrick and/or Denson to submit lower quotes for the same services and thereby divert customers from Shofur to their competitive enterprise.

43.     Since his termination from Shofur and continuing through the present, Defendant Fitzpatrick has continued to engage in competitive activity through the solicitation of contracts for, and the actual provision of, charter bus reservation

services to Shofur customers including the Department of Defense and one or more of its agencies.  Fitzpatrick engaged in such activities through the use of Shofur confidential information and trade secrets.  Fitzpatrick's actions and the actions of the other Defendants were carried out in the Atlanta, Georgia metropolitan area.

44.     On information and belief, Fitzpatrick and the other Defendants have been engaged in this competitive activity through Fitzpatrick's company, Defendant Semper Fidelis Systems, LLC and other as yet unknown entities.

45.     Since the termination of Defendant Fitzpatrick's employment from Shofur, Defendants have successfully diverted all business with the Department of Defense resulting in lost revenue in excess of $1 million.

46.     Upon information and belief, Defendants have been conducting business with other Shofur customers through the use of misappropriated confidential information and trade secrets resulting in additional lost revenue in an as yet undetermined amount believed to be in excess of $5 million.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS UNDER 18 USC §1836(b)

47.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 46 hereof with the same force and effect as if fully set forth herein.

48.    Shofur is the "owner" of the Shofur confidential information defined herein including names, identities, purchasing history, customer information, customer list(s) and contact names, pricing information pertaining to Plaintiff's customers, and potential customers (collectively "customer information"), proprietary business strategies, among other things, and all other "information, data and know-how relating to the business of the Company" (the "confidential information") such that Shofur is the entity in which rightful legal and equitable title to the customer information and confidential information is reposed.

49.    The customer information and confidential information is a "trade secret" within the meaning of 18 USC §1836 because it is the form/type of financial and business information that Shofur has taken reasonable measures to keep secret, and the customer information and confidential information derive independent economic value, actual or potential, from not being generally known or ascertainable to Shofur's competitors who can obtain economic value from the disclosure of the customer information and confidential information disclosure.  As to keeping the customer information and confidential information, Shofur has taken multiple reasonable steps, both externally and internally, including but not limited to the measures described herein to ensure the security of the customer information and confidential information.

50.     As is apparent from the improper acts of Defendants, and Fitzpatrick in particular through the diversion of Shofur business, disclosure of the customer information and confidential information is valuable to Shofur's competitors because it contains proprietary information that can be used to gain an improper competitive advantage in undertaking operations within the same transportation market that Shofur operates in and in negotiating against the interests of Shofur in various competitive business transactions with third parties, including but not limited to Shofur's existing and potential customers within this specific area of interstate commerce.

51.     Fitzpatrick willfully and maliciously misappropriated and, is (along with the other Defendants) still in possession of the customer information and confidential information obtained though improper means.  Defendants have utilized the customer information and confidential information to steal Shofur customers and/or potential customers while Fitzpatrick was employed at Shofur, are continuing to utilize it to interfere with Shofur's relationships with its existing customers and to create and operate competing businesses by gaining lucrative customer contracts with Shofur's customers and potential customers. Defendants have also obtained an unfair competitive advantage in the transportation industry, and related revenue generating activities, throughout the same market in which Shofur operates.

Fitzpatrick's willful and malicious misappropriation and use of the customer information and confidential information occurred without the express or implied consent of Shofur. Further, Fitzpatrick's knowledge of how to misappropriate and use the customer information and confidential information was derived from Fitzpatrick's position of trust at Shofur – a position in which Fitzpatrick's owed Shofur a duty to maintain the secrecy of the customer information and confidential information as a senior sales member and in accordance with his confidentiality agreements.

52.     Fitzpatrick illegally armed with the customer information and confidential information, has created and now conducts business through Semper Fidelis Systems, LLC (and other unknown entities) as a direct competitor to Shofur, allowing for Fitzpatrick and his entities to benefit from the valuable information contained in the customer information and confidential information which was developed, organized and managed by Shofur. Fitzpatrick has also facilitated a situation where Fitzpatrick and his entities will unfairly benefit from having information concerning Shofur's cost structure, pricing, operating margins and sales, customer lists, and other "information, data and know-how relating to the business of the Company".

53.     There also exists a significant continuing danger that Fitzpatrick may further disclose the customer information and confidential information to other Shofur competitors besides Semper Fidelis Systems, LLC, or utilize the customer information and confidential information to assist Shofur competitors in gaining an unfair advantage within the transportation market in which Shofur operates. This danger is heightened by the fact that Fitzpatrick's activities have already demonstrated his willingness to misappropriate customer information and confidential information to Shofur's detriment.

54.     In addition, the customer information and confidential information, by virtue of its relation to Shofur's nationwide business operations and customer base throughout the United States, is related to service used in, or intended for use in, interstate or foreign commerce.

55.     As a direct result of Fitzpatrick's willful and malicious misappropriation, disclosure and use of Shofur trade secrets, the customer information and confidential information without Shofur's consent, Shofur has suffered significant damages.  Shofur's damages include a significant decline in revenue since Fitzpatrick began utilizing its misappropriated customer information and confidential information to sabotage its customer relationships, the loss of multiple customer relationships built over time at great expense to Shofur, and the

loss of a significant competitive advantage over its competitors in the transportation industry. Shofur has suffered further damages in amounts to be determined for loss of business opportunities and future contracts with potential customers.

56.    As a result of the foregoing, Shofur has suffered damages and requests the Court to enter judgment in its favor and against Defendant, Fitzpatrick, for compensatory damages for actual loss and unjust enrichment caused by the misappropriation, prejudgment and post judgment interest, costs, exemplary damages under §1836(b)(3)(C), attorneys' fees under §1836(b)(3)(D), and any other relief deemed just and proper by the Court.

57.    In addition to the foregoing, Shofur is entitled to injunction relief. 18 U.S.C. § 1836(b)(3)(A) provides for the grant of an injunction as a remedy for civil actions brought under Section 1836(b) for the misappropriation of a trade secret.

58.    Shofur has suffered and will suffer irreparable injury if an injunction does not issue. Fitzpatrick's past use of Shofur's customer information and confidential information, and his continued possession of such information, makes an injunction necessary to prevent any further misappropriation of Shofur's customer information and confidential information. A permanent injunction is will ensure the security and protection of Shofur's customer information and confidential information.

59.     As a result of the foregoing Shofur respectfully requests the Court to enter a permanent injunction prohibiting Defendants, including Fitzpatrick, Semper Fidelis Systems, LLC, the remaining Defendants and their agents, servants, employees and attorneys, and any persons or entities acting in concert with or participating with Defendants, from directly or indirectly possessing or further using Shofur's customer information and confidential information obtained by Defendants through improper means.

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS UNDER O.C.G.A. § 10-1-760, et seq.

60.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 59 hereof with the same force and effect as if fully set forth herein.

61.     The Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq.* ("GTSA"), prohibits any person from misappropriating trade secrets by improper means, e.g., theft, bribery, breach of contract or other duty, including inducement of such breach.

62.     The "actual or threatened misappropriation [of a trade secret] may be enjoined." O.C.G.A. § 10-1-762. In addition to or in lieu of injunctive relief, a person is entitled to recover damages for trade secret misappropriation. O.C.G.A. § 10-1-763.

63.     By virtue of his employment with, and performance of responsibilities for Shofur, Fitzpatrick was given access to and now possesses and has delivered to the other Defendants trade secrets including the customer information and the confidential information belonging to Shofur.

64.     On information and belief, Fitzpatrick retained and Defendants are currently in possession of Shofur's trade secrets and have used and disclosed, or threaten to use and disclose, such trade secrets to compete unfairly against Shofur for the benefit of themselves.

65.     Defendants' retention and actual and/or threatened use and disclosure of Shofur's trade secrets, including Shofur's customer information and the confidential information, constitute misappropriation of Shofur's trade secrets in violation of the GTSA.

66.     Furthermore, Defendant Fitzpatrick's misappropriation of Plaintiff' trade secrets has been willful and malicious, entitling Plaintiff to recover exemplary damages.

67.     The actions of Defendant Fitzpatrick as herein alleged entitle Plaintiff to recover from him compensatory damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and monetary damages, and all other further relief authorized by O.C.G.A. § 10-1-760, et seq.

## COUNT III - CONSPIRACY AND VIOLATION OFCOMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

68.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 67 hereof with the same force and effect as if fully set forth herein.

69.     Shofur's computers are protected computers for purposes of the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030, et seq. ("CFAA"), as they are used in or affect interstate or foreign commerce.

70.     Defendant Fitzpatrick intentionally accessed Plaintiff's computers without authorization or exceeded authorized access, and obtained information from such computers, including customer information and confidential information, and caused losses to Shofur of $5,000 or more, which conduct involved interstate and foreign communication.   By virtue of the foregoing, Defendant Fitzpatrick has violated Section (a)(2)(C) of the CFAA, 18 U.S.C. § 1030(a)(2)(C).

71.     Defendant Fitzpatrick knowingly accessed Plaintiff's computers, with intent to defraud, without authorization or exceeded authorized access, and by means of such conduct furthered the intended fraud and obtained information and caused losses of over $5,000.00 in value.   By virtue of the foregoing, Defendant Fitzpatrick has violated Section (a)(4) of the CFAA, 18 U.S.C. § 1030(a)(4).

72.    Defendant Fitzpatrick acted jointly and/or in conspiracy with Defendants Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10 to unfairly and unlawfully compete with Plaintiff by, among other things, knowingly and with intent to defraud, accessed Plaintiff's computers without authorization or exceeded authorized access, and by means of such conduct furthered the intended fraud and obtained information and caused losses of over $5,000.00 in value. By virtue of the foregoing, Defendants Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10 have violated Section (a)(4) of the CFAA, 18 U.S.C. § 1030(a)(4), and Section (b) of the Act, 18 U.S.C. § 1030(b).

73.    Plaintiff has suffered damages and loss by reason of the violations of the CFAA by Defendants Fitzpatrick, Denson, APlus Learning Academy, National Charter Express, Shofur, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10.  By virtue of the foregoing Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

74.    Plaintiff is entitled to all of the remedies and relief set forth in the CFAA, including, without limitation, compensatory damages, injunctive relief,

disgorgement of revenue and/or profits and other equitable relief, and attorneys' fees.

## COUNT IV - BREACH OF CONTRACT – NON-COMPETITION PROVISION

75.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs    1 through 74 hereof with the same force and effect as if fully set forth herein.

76.     During Defendant Fitzpatrick's employment at Shofur and/or within twenty-four months following the termination of his employment, within the territory defined in his employment agreement, Fitzpatrick provided to Shofur customers products or services that are the same as or similar to the products or services which were offered and/or provided by Defendant Fitzpatrick on behalf of Shofur within twenty-four months prior to the termination of his employment with Shofur. As a result of the foregoing, Defendant Fitzpatrick has breached his contractual obligations to Shofur.

77.     As a result of Defendant Fitzpatrick's breaches of his employment agreement as herein alleged, Shofur has been damaged in an amount to be determined at trial.

78.     Shofur has fully performed its contractual obligations to Defendant Fitzpatrick, and the conditions precedent, if any, to its right to recover under Defendant Fitzpatrick's employment agreement have been performed, satisfied, excused, or waived.

79.     The actions of Defendant Fitzpatrick as herein alleged entitle Shofur to recover from him all compensatory damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of profits and/or revenue.

## COUNT V - BREACH OF CONTRACT – NON-SOLICITATION OF CUSTOMERS AND PROSPECTIVE CUSTOMERS

80.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 79 hereof with the same force and effect as if fully set forth herein.

81.     During Fitzpatrick's employment and/or within twenty-four months following the termination of his employment, Fitzpatrick solicited customers and/or prospective customers of Shofur for the purpose of selling or providing products or services that are the same as or similar to the products or services Defendant Fitzpatrick provided on behalf of Shofur within twenty-four months prior to the termination of his employment with Shofur.  As a result of the foregoing, Defendant Fitzpatrick has breached his contractual obligations to Shofur.

82.     During Fitzpatrick's employment and/or within twenty-four months following the termination of his employment, Fitzpatrick interfered with, diverted, or attempted to divert, or take other actions that may have caused customers or prospective customers of Shofur to terminate or adversely alter his, her or its relationship with Shofur. As a result of the foregoing, Defendant Fitzpatrick has breached his contractual obligations to Shofur.

83.     During Fitzpatrick's employment with Shofur and/or within twenty-four months following his termination, on his own behalf or on behalf of persons or entities other than Shofur, Fitzpatrick provided products or services to one or more Shofur customers. As a result of the foregoing, Defendant Fitzpatrick has breached his contractual obligations to Shofur.

84.     As a result of Defendant Fitzpatrick's breaches of his employment agreement as herein alleged, Shofur has been damaged in an amount to be determined at trial.

85.     Shofur has fully performed its contractual obligations to Defendant Fitzpatrick, and the conditions precedent, if any, to Shofur's right to recover under Defendant Fitzpatrick's employment agreement have been performed, satisfied, excused, or waived.

86.     The actions of Defendant Fitzpatrick as herein alleged entitle Shofur to recover from him all compensatory damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of profits and/or revenue.

### COUNT VI - BREACH OF CONTRACT – TRADE SECRETSAND CONFIDENTIAL INFORMATION

87.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 86 hereof with the same force and effect as if fully set forth herein.

88.     During and after his employment with Shofur, by virtue of his using, disclosing, reverse engineering, divulging, selling, exchanging, furnishing, giving away, or transferring in any way trade secrets or customer information and confidential information of Shofur for any purpose except in connection with the performance of his obligations under his employment agreement or as authorized by Shofur, Defendant Fitzpatrick has breached his contractual obligations to Shofur.

89.     Upon the termination of his employment with Shofur, Defendant Fitzpatrick retained trade secrets, customer information and confidential information, including copies that existed in any form (including electronic form) which were in his possession, custody, or control, or destroyed, deleted or altered

the trade secrets, customer information and/or confidential information of Shofur, including any copies existing in any form (including electronic form), without the prior written consent of Shofur.   By virtue of the foregoing, Defendant Fitzpatrick has breached his contractual obligations to Shofur.

90.     As a result of Defendant Fitzpatrick's breaches of his employment agreement as herein alleged, Shofur has been damaged in an amount to be determined at trial.

91.     Shofur has fully performed its contractual obligations to Defendant Fitzpatrick, and the conditions precedent, if any, to Shofur's right to recover under Defendant Shofur's employment agreement have been performed, satisfied, excused, or waived.

92.     The actions of Defendant Fitzpatrick as herein alleged entitle Shofur to recover from him all compensatory damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of profits and/or revenue.

## COUNT VII - BREACH OF DUTY OF LOYALTY

93.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 92 hereof with the same force and effect as if fully set forth herein.

94.     As an employee of Shofur, Defendant Fitzpatrick owed a duty of loyalty to Shofur. Defendant Fitzpatrick engaged in conduct violative of his duty of loyalty for the purpose and with the effect of injuring Plaintiff, to his own advantage and to the advantage of Defendants Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10.

95.     Upon information and belief, Defendant Fitzpatrick's conduct in violation of his duty of loyalty to Shofur, includes but is not limited to, diverting Shofur customer funds to Fitzpatrick, encouraging customers to purchase services from a competitor, encouraging customers to delay the purchase of services until after his departure from Shofur, usurping Plaintiff's corporate opportunities, and otherwise placing his own interests ahead of those of Shofur.  Defendant Fitzpatrick engaged in such conduct willfully and with the intent to cause harm to Shofur.

96.     The actions of Defendant Fitzpatrick as alleged herein entitles Plaintiff to recover from Defendants all compensatory and punitive damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of profits and/or revenue.

## COUNT VIII - BREACH OF FIDUCIARY DUTY: USURPATION OF CORPORATE OPPORTUNITIES

97.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 96 hereof with the same force and effect as if fully set forth herein.

98.     Defendant Fitzpatrick was employed in a fiduciary capacity by Plaintiff and, as such, owed to Plaintiff the utmost duties of loyalty, good faith, and fair dealing.

99.     During Defendant Fitzpatrick's employment at Shofur, there existed certain opportunities falling within the scope and ability of Shofur's business as to which Shofur had both an interest and expectancy growing out of its prior efforts, customer relationships, and good will.

100.     Defendant Fitzpatrick, acting individually and/or for the benefit of Defendants Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10, usurped and/or attempted to usurp Plaintiff's corporate opportunities for the purpose and with the effect of injuring Plaintiff to their own advantage, and otherwise engaged in conduct violative of Defendant Fitzpatrick's fiduciary duties to Plaintiff.

37

101.    The actions of Defendant Fitzpatrick as alleged herein entitle Plaintiff to recover from him all compensatory and punitive damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of all monies paid to him by Shofur following breach of his duty, profits and/or revenue.

## COUNT IX - CONVERSION

102.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 98 hereof with the same force and effect as if fully set forth herein.

103.    By appropriating, without authorization, Shofur's customer funds, confidential and proprietary information, Defendant Fitzpatrick has engaged in conversion.

104.    Plaintiff has been damaged by Defendant Fitzpatrick's conversion in an amount to be determined at trial.

105.    Defendant Fitzpatrick acted maliciously and with intent to harm Plaintiff, or with conscious indifference to the consequences of his actions, entitling Plaintiff to recover punitive damages.

106.    The actions of Defendant Fitzpatrick as herein alleged entitle Plaintiff to recover from him all compensatory and punitive damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of profits.

## COUNT X - STORED COMMUNICATIONS ACT

107.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 106 hereof with the same force and effect as if fully set forth herein.

108.    Defendant Fitzpatrick acquired,  altered, and/or prevented authorized access to Plaintiff's electronically-communicated information and trade secrets by intentionally accessing, without Plaintiff's authority and/or in excess of authority granted, a protected computer or protected computer network owned by Plaintiff, through which Plaintiff provided electronic communication service to authorized users, and on which Plaintiff stored other electronic communications. Defendant Fitzpatrick wrongfully obtained Plaintiff's confidential information and trade secrets while said information was in electronic storage in said computers or computer systems.

109.    Defendant Fitzpatrick's actions constitute unlawful access to stored information and violations of the Stored Communications Act, 18 U.S.C. § 2701.

110.    Defendant Fitzpatrick's actions in violation of the Stored Communications Act, 18 U.S.C. § 2701, as herein alleged, were willful and/or intentional.

111.    Plaintiff has suffered damage and loss by reason of Defendant Fitzpatrick's violations of the Stored Communications Act, 18 U.S.C. § 2701, as herein alleged, in an amount to be determined by the enlightened conscience of the jury.

112.    Plaintiff is entitled to all of the remedies and relief set forth in 18 U.S.C. § 2707, including, without limitation, damages, interlocutory relief, disgorgement of revenues and/or profits and other equitable relief, declaratory relief, punitive damages, and attorneys' fees and other litigation costs reasonably incurred.

## COUNT XI - GEORGIA COMPUTER SYSTEMS PROTECTION ACT

113.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 112 hereof with the same force and effect as if fully set forth herein.

114.    Defendant Fitzpatrick acted for himself in using Shofur's computers or computer network with knowledge that such use was without authority and with the

intention of (a) taking or appropriating property of Plaintiff; (b) obtaining property by deceitful means or artful practice; and/or (c) converting property to their use in violation of the Georgia Trade Secrets Act.  By virtue of the foregoing, Defendant Fitzpatrick has engaged in computer theft in violation of the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-93(a).

115.   Defendants Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10 acted jointly and/or in conspiracy with Defendant Fitzpatrick to unfairly and unlawfully compete with Plaintiff by, among other things, using Plaintiff's computers or computer network with knowledge that such use was without authority and with the intention of (a) taking or appropriating property of Plaintiff; (b) obtaining property by deceitful means or artful practice; and/or (c) converting property to their use in violation of the Georgia Trade Secrets Act.  By virtue of the foregoing, Defendants Fitzpatrick, Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10 have engaged in computer theft in violation of the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-93(a).

116.   Plaintiff is entitled to all of the remedies and relief set forth in the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-90, et seq., including, without limitation, damages, including loss of profits and victim expenditure, injunctive relief, disgorgement of revenue and/or profits and other equitable relief, and attorneys' fees.

## COUNT XII - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND PROSPECTIVE BUSINESS RELATIONS

117.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 116 hereof with the same force and effect as if fully set forth herein.

118.   Defendants Fitzpatrick, Denson, APlus Learning Academy, National Charter Express, Shofurr Express, LLC, Semper Fidelis Systems LLC and John Does 1 through 10 and John Doe Entities 1 through 10 used Plaintiff's trade secrets for their own benefit in violation of the Georgia Trade Secret Act, for the purpose of inducing Shofur's customers and potential customers not to enter into new business with Plaintiff; and by other unlawful conduct, Defendants, without justification or excuse, have unlawfully and tortiously interfered with Plaintiff's business relations and prospective business relations with its customers and potential customers.

119.    Plaintiff has suffered financial injury as a result of Defendants' tortious interference with Plaintiff's business relations and prospective business relations with its customers and potential customers in an amount to be determined at trial.

120.    Defendants have acted maliciously and with intent to harm Plaintiff, or with conscious indifference to the consequences of their actions.

121.    The actions of Defendants as herein alleged entitle Plaintiff to recover from them, jointly and severally, all compensatory and punitive damages flowing therefrom, as well as all appropriate equitable relief, including injunctive relief and disgorgement of revenues and/or profits.

## COUNT XIII - UNJUST ENRICHMENT / ACCOUNTING / DISGORGEMENT OF REVENUES AND/OR PROFITS

122.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 121 hereof with the same force and effect as if fully set forth herein.

123.    Plaintiff is the sole owner of its confidential information and trade secrets.

124.    Defendants diverted for their own use customer funds payable to Shofur, and are using Plaintiff's confidential information and trade secrets for their own benefit, gain, and advantage, to unfairly compete with Plaintiff.

125.   Defendants have not paid Plaintiff any compensation in the form of diverted funds, revenue, profits, royalties or other payments for their use and exploitation of Plaintiff's customer information, confidential information and trade secrets.

126.   It would be inequitable and unjust for Defendants to retain the benefits, gains, and advantages from their use and exploitation of Plaintiff's customer information, confidential information and trade secrets and customer funds that should have been paid to Shofur. Defendants should not in equity and good conscience be permitted to retain the benefits, gains, and advantages resulting from their use and exploitation of Plaintiff's customer information, confidential information and trade secrets and diverted funds.

127.   Defendants are liable to Plaintiff for unjust enrichment, in an amount to be determined and proven at trial.

128.   The actions of Defendants as herein alleged entitle Plaintiff to an accounting of the revenues and profits derived by Defendants from their use and exploitation of Plaintiff's customer information, confidential information and trade secrets.

129.    The actions of Defendants as herein alleged entitle Plaintiff to recover from them, jointly and severally, all appropriate equitable relief, including injunctive relief and disgorgement of profits.

## COUNT XIV - CIVIL CONSPIRACY

130.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 129 hereof with the same force and effect as if fully set forth herein.

131.    As described herein above, Defendants have engaged in tortious conduct and have committed acts constituting violations of Plaintiff's statutory and common law rights.

132.    In so doing, Defendants have acted pursuant to and in accordance with a common plan or design for the purpose and with the effect of injuring Plaintiff to their own advantage. As such, Defendants have conspired to accomplish unlawful ends and/or to accomplish lawful ends by unlawful means.

133.    Each Defendant either participated in the design, formulation, and implementation of the conspiracy or joined the conspiracy with knowledge of its existence and purpose and committed acts in its furtherance. As such, liability for the aforementioned tortious conduct and contractual and statutory violations committed by one or some Defendants is imputed to all Defendants.

45

134.    Plaintiff has suffered damage and loss by reason of Defendants' acts in furtherance of the above-described conspiracy in an amount to be determined at trial.

135.    Defendants have acted maliciously and with intent to harm Plaintiff, or with conscious indifference to the consequences of their actions, thereby entitling Plaintiff to an award of punitive damages.

## COUNT XV - INJUNCTIVE RELIEF

136.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 135 hereof with the same force and effect as if fully set forth herein.

137.    On the basis of the foregoing, Plaintiff is entitled to temporary, interlocutory, and permanent injunctive relief, including the issuance of an order enjoining Defendants and their respective agents, employees, officers, servants, attorneys, and representatives, irrespective of whether such individuals are named as parties to this action, from directly or indirectly, or alone or in concert with others, continuing to use, disclose, or otherwise exploit for their benefit, for the benefit of any third party or to the detriment of Plaintiff, or for any other purpose, Plaintiff's customer information, confidential information and trade secrets.

138.    On the basis of the foregoing, Plaintiff is entitled to temporary, interlocutory, and permanent injunctive relief, including the issuance of an order

enjoining Defendants and their respective agents, employees, officers, servants, attorneys, and representatives, irrespective of whether such individuals are named as parties to this action, requiring that all original records and copies, computer files and/or other reproductions thereof, in whatever form, whether partial or whole, constituting, containing, describing, or otherwise referencing Plaintiff's customer information, confidential information and/or trade secrets, be returned to Plaintiff by delivering same to Plaintiff's counsel, identified below.

139.   On the basis of the foregoing, Plaintiff is entitled to temporary, interlocutory, and permanent injunctive relief, including the issuance of an order enjoining Defendants and their respective agents, employees, officers, servants, attorneys, and representatives, irrespective of whether such individuals are named as parties to this action, from directly or indirectly, or alone or in concert with others, continuing to engage in activities constituting tortious interference with Plaintiff's business relations, prospective business relations, and/or contractual relationships.

140.   On the basis of the foregoing, Plaintiff is entitled to temporary, interlocutory, and permanent injunctive relief, including the issuance of an order enjoining Defendants and their respective agents, employees, officers, servants, attorneys, and representatives, irrespective of whether such individuals are named as parties to this action, from directly or indirectly, or alone or in concert with others,

continuing to derive benefits from and/or cause detriment to Plaintiff based on Defendant Fitzpatrick's prior activities in violation of his duty of loyalty, duty of good faith and fair dealing, and/or fiduciary duty to Plaintiff, including but not limited to the usurpation of Plaintiff's corporate opportunities.

141.   Defendants' actions, if not enjoined, will irreparably injure Plaintiff in that such conduct will cause Plaintiff to continue to lose customers and customer goodwill, injuries for which there exists no adequate remedy at law. Plaintiff is entitled to immediate injunctive relief to prevent further harm and to avoid such irreparable injury.

## **COUNT - XVI PUNITIVE DAMAGES**

142.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 141 hereof with the same force and effect as if fully set forth herein.

143.   Defendants, jointly and severally, have acted maliciously and with intent to harm Plaintiff, or with conscious indifference to the consequences of their actions. Consequently, Plaintiff is entitled to recover punitive damages from Defendants pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined at trial.

144.    Plaintiff is further entitled to recover punitive damages pursuant to 18 U.S.C. § 2707(c) and exemplary damages pursuant to O.C.G.A. § 10-1-763(b).

## COUNT XVII ATTORNEYS' FEES

145.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 144 hereof with the same force and effect as if fully set forth herein.

146.    By engaging in the above-referenced conduct, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Plaintiff has incurred expenses in connection with their efforts to prevent and minimize the effects of Defendants' unlawful activities. Accordingly, Plaintiff is entitled to recover all costs of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

147.    Plaintiff is entitled to recover all costs of litigation, including reasonable attorneys' fees, pursuant to all applicable laws, including O.C.G.A. § 10-1-764, O.C.G.A. § 16-9-93(g)(1), and 18 U.S.C. § 2707(b)(3).

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Shofur, LLC respectfully requests as relief in this action that the Court:

(i)  Enter an injunction against the Defendants, jointly and severally, ordering them to immediately return any and all of Shofur's confidential, proprietary and/or trade secret information in their possession;

(ii)   Enter a permanent injunction against the Defendants, jointly and severally, enjoining them from any further use of Shofur's confidential, proprietary and/or trade secret information for any purpose;

(iii)   Order Defendants to disgorge the unlawful revenues and/or profits earned by Defendant Fitzpatrick and the other Defendants from all Defense Department and other Shofur customer contracts;

(iv)   Award Shofur actual damages against the Defendants, jointly and severally, in an amount to be proven at trial but at a minimum in the amount of the revenues and/or profits misappropriated by Fitzpatrick and otherwise lost to Defendants relating to Shofur customers and Defendant Fitzpatrick's breach of his confidentiality, non-competition, and non-solicitation agreements;

(v)  Award Shofur compensatory damages against Fitzpatrick based on the compensation (including salary and bonuses) paid to him during the periods of his disloyalty to Shofur in amounts to be proven at trial;

(vi)   Award Shofur statutory damages against Defendants, jointly and severally, for violation of the statutes that form the basis of the specified statutory claims herein;

(vii) Issue an order directing an accounting of Defendants' revenues diverted by Fitzpatrick in addition to profits derived by Defendants from their use and exploitation of Plaintiff's confidential information and trade secrets and their business dealings with Shofur customers;

(viii)   Award Shofur punitive damages against Defendant Fitzpatrick and the other Defendants, jointly and severally, where authorized by statute and under common law in an amount to be proven at trial;

(ix)  Award Shofur prejudgment and post-judgment interest as provided by statute and under common law;

(x)  Award Shofur its attorneys' fees, expenses and costs; and

(xi)  Award Shofur such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Shofur, LLC respectfully demands a trial by jury.

This 20th Day of March, 2020.


ELARBEE, THOMPSON, SAPP & WILSON, LLP        s/ Douglas H. Duerr
800 International Tower                                      Douglas H. Duerr [2]
229 Peachtree Street, N.E.                                  Georgia Bar No. 231772
Atlanta, Georgia 30303
404/659-6700 (telephone)
404/222-9718 (facsimile)
Duerr@elarbeethompson.com

MOSS & GILMORE LLP
3630 Peachtree Road, Suite 1025
Atlanta, Georgia 30326
678/381-8601 (telephone)
815/364-0515 (facsimile)
Raymond L. Moss (Georgia Bar No. 526569)
Michael P. Gilmore (Petition for Admission Prod Hac Vice to be filed promptly)

*Attorneys for Plaintiff*

---

[2] Counsel certifies that this document has been prepared in Times New Roman font 14 point in accordance with LR 5.1 of the Northern District of Georgia.